IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

EGGS 'N THINGS INTERNATIONAL )    CIVIL NO. 10-00298 JMS-LEK
HOLDINGS PTE. LTD., a )
Singapore private limited )
company, and EGGS 'N THINGS )
JAPAN, K.K., a Japan company, )
                     )
        Plaintiffs, )
                     )
    vs.               )
                     )
ENT HOLDINGS LLC, a Hawai`i )
limited liability company, )
                     )
        Defendant. )
_____ )

**FINDINGS AND RECOMMENDATION TO DENY
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

      Before the Court, pursuant to a designation by United

States District Judge J. Michael Seabright, is Plaintiffs Eggs 'N

Things International Holdings PTE. Ltd. ("Plaintiff ENT

International") and Eggs 'N Things Japan, K. K.'s ("Plaintiff ENT

Japan", both collectively "Plaintiffs") Motion for Attorneys'

Fees and Costs ("Motion"), filed on September 21, 2010.

Plaintiffs request an award of $82,157.04 in attorneys' fees.[1]

_____

      [1] The Motion states that Plaintiffs seek costs pursuant to
Federal Rule of Civil Procedure 54(d), and Plaintiffs attached
their Bill of Costs, which they also filed as a separate
document, [dkt. no. 40,] to the Motion as an exhibit.  On
September 30, 2010, this Court issued an order granting the
objections to the Bill of Costs and denying the Bill of Costs
without prejudice for failure to comply with the applicable
rules.  [Dkt. no. 46.]  The Court, however, gave Plaintiffs leave
to file an amended bill of costs, which Plaintiffs did on October
                                         (continued...)

On October 25, 2010, Defendant FB Innovation Hawaii, Inc.
("Defendant FB") filed an opposition to the Motion, and Defendant
ENT Holding LLC ("Defendant ENT HI") filed a substantive joinder
in the opposition.  Plaintiffs filed their reply on November 12,
2010.  The Court finds this matter suitable for disposition
without a hearing pursuant to Rule LR7.2(d) of the Local Rules of
Practice of the United States District Court for the District of
Hawai`i ("Local Rules").  After reviewing the parties'
submissions and the relevant legal authority, the Court HEREBY
FINDS AND RECOMMENDS that Plaintiffs' Motion be DENIED.

## BACKGROUND

Plaintiffs filed their original Complaint on May 19,
2010 against Defendant ENT HI.  Plaintiffs filed their First
Amended Complaint on May 21, 2010 against Defendant ENT HI,
Defendant FB, and Defendant Yuka Nishizawa ("Defendant
Nishizawa", all collectively "Defendants").  Eggs 'N Things is a
breakfast restaurant in Waikiki ("ENT Waikiki").  [First Amended
Complaint at ¶ 8.]  Defendant ENT HI closed the restaurant on
August 31, 2008.  In mid-2008, Defendant Nishizawa, who is the
sole member of Defendant ENT HI, began seeking private investors

---

[1](...continued)
14, 2010.  [Dkt. nos. 48-49.]  No objections were filed and, on
November 3, 2010, the Clerk of the Court taxed the costs
requested in the Amended Bill of Costs.  [Dkt. no. 52.]  Thus,
only Plaintiffs' request for attorneys' fees is before the Court
in the instant Motion.

to gain needed capital. [Id. at ¶¶ 3, 11-12.]  On March 21, 2009, Kouta Matsuda, an international entrepreneur, and Defendant ENT HI entered into a license agreement giving Mr. Matsuda franchise rights in certain international areas, including Japan ("the Agreement"). [Id. at ¶¶ 13, 15; Exh. 1.]  Some of these rights included: 1) the right to operate Eggs 'N Things ("ENT") restaurants directly or through subfranchises; 2) the right to use ENT trademarks, recipes, designs, trade dress, etc.; and 3) the right to create new menu items. [First Amended Complaint at ¶ 15.]  Mr. Matsuda paid a franchise fee of 40,000,000 Japanese Yen and agreed to pay an additional one percent royalty on net revenue from sales within the franchises. [Id. at ¶¶ 19-20.]

Disputes subsequently arose relating to the Agreement. [Mem. in Supp. of Motion at 2.]  In September 2009, Plaintiff ENT Japan informed Defendant ENT HI that it found a location for a flagship ENT restaurant in Japan ("ENT Harajuku").  None of the Defendants responded.  Plaintiff ENT Japan signed a lease for the location and began the process of opening ENT Harajuku. [First Amended Complaint at ¶¶ 26-27.]

ENT Harajuku opened in February 2010 and held a grand opening in March 2010. [Id. at ¶ 48.]  On May 14, 2010, Plaintiffs discovered that Defendant ENT HI and/or Defendant FB had posted a disclaimer on ENT Waikiki's website, and in ENT Waikiki's storefront, stating, inter alia, that ENT Harajuku was

not affiliated with ENT Waikiki ("the Disclaimer").   [Id. at ¶
50.]   Plaintiffs state that they asked Defendants to remove the
Disclaimer, but Defendants refused to do so.   [Mem. in Supp. of
Motion at 3.]   Plaintiffs filed an arbitration demand under the
terms of the Agreement, and filed the instant action to seek
provisional remedies to preserve the effectiveness of the
arbitration proceedings.   [First Amended Complaint at ¶¶ 58-60.]

Plaintiffs allege that the posting of the Disclaimer,
and other actions enumerated in the First Amended Complaint,
constitute: breach of contract; a violation of the Hawai`i
Franchise Investment Law, Haw. Rev. Stat. Chapter 482E; unfair
competition in violation of Haw. Rev. Stat. § 480-2; deceptive
trade practices in violation of Haw. Rev. Stat. § 481A-3; and
business defamation and commercial disparagement.   Plaintiffs'
First Amended Complaint sought: damages; interim and permanent
injunctive relief; an order requiring alternative dispute
resolution as required under the parties' Agreement; reasonable
attorneys' fees and costs; and any other appropriate relief.

On May 19, 2010, Plaintiffs filed a Motion for
Temporary Restraining Order/Preliminary Injunction against
Defendant ENT HI ("TRO Motion").   [Dkt. no. 4.]   On May 24, 2010,
after the addition of Defendant FB and Defendant Nishizawa with
the filing of the First Amended Complaint, Plaintiffs filed an
Amended Motion for Temporary Restraining Order/Preliminary

4

Injunction against Defendants ("Amended TRO Motion").[2]  [Dkt. no.
17.]  The district judge held a hearing on both motions on
May 24, 2010 and orally granted the requests for a temporary
restraining order in part and denied them in part.  [Minutes,
filed 5/24/10 (dkt. no. 23).]  On May 27, 2010, the district
judge issued a written order granting in part and denying in part
the TRO Motion and the Amended TRO Motion ("TRO Order").  [Dkt.
no. 26.]  The TRO Order prohibited Defendants from displaying the
Disclaimer and from making any further "false or misleading
[statements] regarding the ENT brand in Japan or the Harajuku
restaurant, including, but not limited to, any disclaimer of
affiliation with Plaintiffs[.]"  [TRO Order at 12.]  On June 23,
2010, the district judge approved and filed the parties'
Stipulated Permanent Injunction and Order ("Stipulated
Injunction"), [dkt. no. 34,] and on September 7, 2010, the
district judge approved and filed the parties' stipulation to
dismiss all remaining claims and parties without prejudice.
[Stipulation for Dismissal Without Prejudice as to Remaining
Claims and Parties and Order, (dkt. no. 39) ("Stipulation for

---

[2] The district judge only addressed the motions as to their
requests for a temporary restraining order.  The parties were to
confer as to a suggested hearing date for the requests for a
preliminary injunction, [Minutes, filed 5/24/10 (dkt. no. 23),]
but the requests for preliminary injunction became moot after the
district judge approved the parties' stipulated permanent
injunction.  The Court will therefore only address the motions'
request for a temporary restraining order.

Dismissal").]

In the instant Motion, Plaintiffs assert that they are the prevailing party, and they seek attorneys' fees pursuant to Hawai`i Revised Statutes § 480-13(a)(2) and § 481A-4(b). Plaintiffs contend that the Stipulated Injunction renders them the prevailing party.  Section 480-13(a)(2) provides that any person whose business or property is injured by anything forbidden or declared unlawful in Chapter 480 "shall be awarded reasonable attorneys' fees [and] costs of suit."  In order to prevail on a § 480-13 claim, a plaintiff must establish three elements: a violation of Hawai`i Revised Statutes Chapter 480; injury to business or property; and proof of the amount of damages resulting from the injury.  Plaintiffs point out that Defendant FB stipulated to a permanent injunction, which was one of the forms of relief that Plaintiffs sought in the First Amended Complaint.

Plaintiffs further claim that a prevailing party under Hawai`i law, as well as under Ninth Circuit case law, is the party that prevails on "'the disputed main issue'" or "'any significant issue in litigation'".  [Mem. in Supp. of Motion at 6-7 (quoting Queen Emma Found. v. Tatibouet, 2010 Haw. App. LEXIS 419, at *30 (quoting Food Pantry, Ltd. v. Waikiki Business Plaza, Inc., 58 Haw. 606, 620, 575 P.2d 869, 879 (1978)); Park v. Anaheim Union High Sch. Dist., 464 F.3d 1025, 1034-37 (9th Cir.

2006)).]  Further, a party can prevail on either procedural or
substantive grounds.  [Id. at 6 (citing Wong v. Takeuchi, 88
Hawai`i 46, 961 P.2d 611 (Haw. 1998)).]  Plaintiffs argue that
they accomplished their main goals in this action: removal of the
Disclaimer from the ENT Waikiki website and storefront; and
prohibition of further similar conduct.  Plaintiffs therefore
contend that they are the prevailing party and that they are
entitled to attorneys' fees pursuant to § 480-13.

      Plaintiffs also argue that they are entitled to
attorneys' fees under § 481A-4.  Specifically, Plaintiffs argue
that they are entitled to attorneys' fees incurred in obtaining
the Stipulated Injunction against Defendant FB because the First
Amended Complaint sought injunctive relief under § 481A-4 against
Defendant FB.  Thus, Plaintiffs contend that they are the
prevailing party for purposes of § 481A-4.  Plaintiffs also point
out that the First Amended Complaint sought an order requiring
Defendants to submit to mediation and/or arbitration, as required
under the Agreement.  Plaintiffs argue that, insofar as the
instant matter is now in the forum sought in the First Amended
Complaint, they are also entitled to attorneys' fees related to
that portion of the litigation.

      Plaintiffs argue that the requested attorneys' fees are
reasonable under Hawai`i law, which determines the reasonableness
of attorneys' fees in a diversity action.  [Id. at 9 (citing

7

Riordan v. State Farm Mut. Auto. Ins. Co., 2008 U.S. Dist. LEXIS
47734 (D. Mont.) (citing Carnes v. Zamani, 488 F.3d 1057, 1059
(9th Cir. 2007)))).] Plaintiffs assert that their requested
hourly rates are reasonable and comparable to the rates of
attorneys in the community with similar skills and experience.
[Id. at 11; Aff. of Glenn T. Melchinger ("Melchinger Aff."),
Exhs. B, C.] Plaintiffs also argue that the hours expended are
reasonable, and they provided a description of the services
rendered and an itemization of the work performed. [Mem. in
Supp. of Motion at 12-13; Melchinger Aff., Exhs. A, B.] Finally,
Plaintiffs assert that the requested fees were reasonably and
necessarily incurred to protect their interests. Plaintiffs
argue that they incurred these fees because Defendant FB refused
to discontinue the posting of the Disclaimer.

        In its memorandum in opposition, Defendant FB first
argues that the district court lacks diversity jurisdiction.
Although the First Amended Complaint alleged that Defendant
Nishizawa was a permanent resident alien and a citizen of Hawai`i
for jurisdictional purposes, [First Amended Complaint at ¶¶ 1,
3,] Plaintiffs knew, or should have known, that Defendant
Nishizawa was a Japan citizen, living in the United States on a
temporary work visa. [Mem. in Opp. at 7, 21; Decl. of Yuka
Nishizawa ("Nishizawa Decl.") at ¶¶ 8-10; Exhs. 1, 2.] Plaintiff
ENT Japan is a Japan company and its sole place of business is in

Japan.  [First Amended Complaint at ¶ 5.]  Defendant FB therefore
argues that complete diversity is lacking because 28 U.S.C. §
1332 requires that each plaintiff be diverse from each defendant.
[Mem. in Opp. at 19 & n.13 (citing Wisconsin Dep't of Corrections
v. Schacht, 254 U.S. 381, 388 (1998)).]  Further, parties cannot
waive or consent to defects in subject matter jurisdiction.  The
lack of jurisdiction is an issue that the district court must
raise *sua sponte* based on the facts at the time the plaintiff
filed the complaint.  [Id. at 20 & nn. 16, 18 (citing Mitchell v.
Maurer, 293 U.S. 237, 244 (1934); Freeport-McMoRAN, Inc. v. K N
Energy, Inc., 498 U.S. 426, 428 (1991) (per curiam) (some
citations omitted)).]  Defendant FB points out that Plaintiffs
only served it with the First Amended Complaint and the Amended
TRO Motion hours before the hearing on the TRO Motion and the
Amended TRO Motion on May 24, 2010.[3]  Counsel for Defendant FB
made a special appearance at the hearing but, if it had a fair
opportunity to review and file an opposition to Plaintiffs'
complaint and motion, Defendant FB would have contested
jurisdiction at that time.  [Id. at 21.]  In addition to the fact
that Plaintiff ENT Japan and Defendant Nishizawa are not diverse,

---

[3] The Court notes that elsewhere in Defendant FB's
memorandum in opposition, it states that it was served with the
pleadings on May 25, 2010.  [Mem. in Opp. at 10.]  The Return and
Acknowledgment of Service, filed May 25, 2010, also indicates
that Defendant FB was served with the First Amended Complaint and
Summons on May 25, 2010.  [Dkt. no. 25.]

both Plaintiff ENT Japan and Plaintiff ENT International are
aliens, which also destroys diversity jurisdiction when there is
an alien defendant.  Defendant FB contends that any action that
the district court took without jurisdiction is invalid.

Defendant FB notes that, before dismissing an action
for lack of complete diversity, courts may consider whether the
non-diverse party is necessary and indispensable under Federal
Rule of Civil Procedure 19 and 21.  If the non-diverse party is
not necessary or indispensable, the party may be dropped from the
case to preserve diversity jurisdiction.  Defendant FB, however,
argues that, under the circumstances of this case, Defendant
Nishizawa is necessary and indispensable.  She was the active,
primary participant in the actions that Plaintiffs challenge in
the First Amended Complaint.  Further, Defendant Nishizawa would
be prejudiced, the public interest would not be served, and
Plaintiffs would not have an adequate remedy, if Defendant
Nishizawa were dropped from this case.  Defendant FB also argues
that the Court must consider both the fact that Plaintiffs knew
or should have known of Defendant Nishizawa's citizenship and the
fact that Plaintiffs vigorously attempted to serve Defendant
Nishizawa, indicating that they considered her an indispensable
party.  Defendant FB argues that equity does not favor Defendant
Nishizawa's retroactive dismissal.  Even if this Court is
inclined to find that jurisdiction exists, Defendant FB argues

that the Court should scrutinize Plaintiffs' "misconduct" regarding Defendant Nishizawa's citizenship and reduce any award of attorneys' fees accordingly. [Id. at 28-29.]

Defendant FB next argues that Plaintiffs improperly seek fees from Defendant FB for work done before Defendant FB was a party to this action. Plaintiffs seek fees for the original Complaint and TRO Motion, even though Defendant FB is not named in either of those documents. Defendant FB also notes that, although it is named as a defendant in the Amended TRO Motion, it did not have the opportunity to file a response to that motion. Moreover, Defendant FB states that Plaintiffs never contacted it about the Disclaimer prior to the filing of the First Amended Complaint and the Amended TRO Motion; Plaintiffs' demand to remove the Disclaimer was directed to Defendant ENT HI.[4] [Mem. in Opp., Decl. of Steven M. Egesdal at ¶¶ 8-9.] Defendant FB therefore argues that the Court should deny all attorneys' fees that Plaintiffs incurred before they served Defendant FB on May 25, 2010. [Mem. in Opp. at 10.]

Defendant FB next argues that Plaintiffs are not the prevailing party for purposes of an award of attorneys' fees because the district judge only granted a small portion of the relief that Plaintiffs sought. Plaintiffs sought the removal of

---

[4] Defendant FB notes that it is a separate and independent legal entity from Defendant ENT HI, although both are owned and controlled by Defendant Nishizawa. [Nishizawa Decl. at ¶¶ 1-4.]

the Disclaimer, which contained two statements that Plaintiffs challenged, and a correction of the statements in the Disclaimer. In the TRO Order, the district judge only required Defendant FB to remove one of the two challenged statements in the Disclaimer, and the district judge denied Plaintiffs' request for a correction of either statement. Thus, Plaintiffs only obtained one-fourth of the relief that they sought in the Amended TRO Motion. Defendant FB argues that, if the Court finds that Plaintiffs are entitled to attorneys' fees, the Court should limit the award to one-fourth of Plaintiffs' request, subject to further restrictions on the reasonableness of the individual items. [Mem. in Opp. at 12.] Defendant FB also argues that the Court should not award any fees associated with the parties' arbitration. The district judge did not make any rulings or award any relief regarding the parties' arbitration.

Defendant FB further argues that Plaintiffs cannot recover statutory attorneys' fees because the relief that the district judge awarded was based on the Agreement. The relief in the TRO Order was based on contract interpretation, not on Chapter 480 or Chapter 481A. The parties' Stipulated Injunction and the Stipulation for Dismissal encompass the relief in the TRO Order; they did not expand the parameters of, or the basis for, the relief that Plaintiffs were entitled to. Thus, Defendant FB contends that the Stipulated Injunction and the Stipulation for

12

Dismissal are also based on a contract analysis and cannot support an award of attorneys' fees based on either § 480-13 or § 481A-4.  Defendant FB emphasizes that Plaintiffs did not timely move for attorneys' fees under the assumpsit statute, Haw. Rev. Stat. § 607-14, and therefore Plaintiffs waived any entitlement to such an award.

Assuming, *arguendo*, that Plaintiffs are entitled to an award of attorneys' fees, Defendant FB argues that Plaintiffs' requested fees are grossly excessive.  Defendant FB contends that both counsel's requested hourly rates are the number of hours Plaintiffs' counsel expended in this case were unreasonable.  Further, insofar as Plaintiffs did not attempt to negotiate the removal of the Disclaimer with Defendant FB before filing the First Amended Complaint, all of the fees that Plaintiffs incurred before Defendant FB entered the action were self-imposed and avoidable.  Defendant FB also argues that Plaintiffs' counsel used block billing in their billing records, making it impossible to determine how much time counsel spent on individual tasks.  Defendant FB urges the Court to reduce all of Plaintiffs' requested attorneys' fees by ten percent to account for counsel's block billing.  [Mem. in Opp. at 19.]  Defendant FB also argues that the Court should greatly reduce all of counsel's time entries because they are excessive in comparison to the relief that Plaintiffs obtained.

In its substantive joinder in Defendant FB's memorandum in opposition, Defendant ENT HI adopts all of Defendant FB's arguments and argues that Plaintiffs' Motion should be denied in its entirety.  Defendant ENT HI also discusses additional procedural background regarding communications that occurred between counsel, but the Court finds those matters to be irrelevant to the instant Motion.

In their reply, Plaintiffs argue that Defendant FB's jurisdictional argument is without merit because the parties stipulated to dismiss Defendant Nishizawa from this action. Plaintiffs contend that Defendant FB's jurisdictional argument improperly seeks to re-join Defendant Nishizawa.  Plaintiffs argue that, if this Court chooses to evaluate Defendant FB's argument for re-joining Defendant Nishizawa as a party, she is neither necessary nor dispensable to this action.  The substantive litigation is over, and Defendant Nishizawa does not face any personal liability for attorneys' fees.  Further, there is no risk of incurring double liability or danger of the remedy being inadequate because Defendant Nishizawa has no claims against Plaintiffs or the other defendants.  Plaintiffs note that even the arbitration is proceeding without Defendant Nishizawa as a party.

As to Defendant FB's argument that Plaintiffs only prevailed on one-fourth of their claims, Plaintiffs argue that

14

they are the prevailing party because they obtained the relief sought on the "disputed main issue." [Reply at 12 (citations and quotation marks omitted).]  A party is not required to prevail on all of its claims to be considered a prevailing party.  [Id. (citing Fought & Co., Inc. v. Steel Engineering and Erection, Inc., 87 Hawai`i 37, 53 (1998) (some citations omitted)).]  A party need only obtain relief on the disputed main issue, and not necessarily to the extent they originally petitioned for.  [Id. (quoting Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc., 58 Haw. 606, 620, 575 P.2d 869, 879 (1978) (some citations omitted)).]  Further, Plaintiffs point out that prevailing "by court-ordered consent decree rather than at trial or by motion does not weaken [a party's] claim to fees." [Id. at 13 (citing Maher v. Gagne, 448 U.S. 122, 129 (1980)).]  Even if the Court considers the percentage of relief that Plaintiffs obtained, Plaintiffs contend that they obtained one hundred percent of the primary relief they sought, the removal of the Disclaimer.  The disclaimer of affiliation had to be immediately removed, and Plaintiffs also assert that the second part of the Disclaimer, which addressed merchandise, must also be removed or altered once merchandise is offered for sale at ENT Harajuku.  Plaintiffs acknowledge that they did not obtain an order for a correction notice, but they assert that this issue occupied only a small portion of the parties' efforts.

15

As to Defendant FB's argument that Plaintiffs cannot seek statutory attorneys' fees because the TRO Order was based on contract, Plaintiffs contend that the Stipulated Injunction is based on Chapters 480 and 481A.  The Stipulated Injunction could not be based upon contract because there is no contract between Plaintiffs and Defendant FB.  Plaintiffs emphasize that the Stipulated Injunction does not mention the TRO Order, but the Stipulated Injunction specifically states that it negates the need for further proceedings against Defendant FB.

As to Defendant FB's argument that Plaintiffs are seeking attorneys' fees from the wrong party, Plaintiffs explain that virtually all fees incurred in this litigation, including those relating to claims against Defendant ENT HI, were also related to the claims against Defendant FB.  Very little of the work was unique to Defendant ENT HI.  [Id. at 16.]  Further, Plaintiffs argue that Defendant FB was presented with various opportunities to protect its interests, despite the fact that it was not named in the original Complaint, because Defendant Nishizawa owns and controls both Defendant ENT HI and Defendant FB.  Plaintiffs emphasize that Defendant FB chose to agree to the Stipulated Injunction rather than proceeding with a preliminary injunction hearing and a trial.

Finally, Plaintiffs argue that their requested attorneys' fees are not excessive.  Plaintiffs argue that

counsel's requested rates are reasonable in light of their experience and skills.  Plaintiffs acknowledge that this Court has awarded lower rates in the past, but they argue that the Court should disregard the prior awards because of the circumstances of this case and new evidence of the prevailing rates.  Plaintiffs also note that Defendant FB and Defendant ENT HI did not identify a single item of attorney work that was redundant, self-imposed, or avoidable.

## **DISCUSSION**

## I.  **Jurisdiction**

At the outset, this Court must address whether the district court has jurisdiction to award attorneys' fees in this case.  See Detabali v. St. Luke's Hosp., 482 F.3d 1199, 1202 (9th Cir. 2007) ("Defects in subject matter jurisdiction are nonwaivable and may be raised at any time, including on appeal." (citing Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) (some citations omitted))).

Both the Complaint and the First Amended Complaint alleged diversity jurisdiction.  [Complaint at ¶ 4; First Amended Complaint at ¶ 6.]  The First Amended Complaint alleged that Plaintiff ENT International is a Singapore private limited company with its principal place of business in Singapore, and Plaintiff ENT Japan is a Japan company with its sole place of business in Japan.  [First Amended Complaint at ¶¶ 4-5.]  It

17

alleged that Defendant ENT HI's principal place of business is Hawai`i, and its sole member is Defendant Nishizawa.  Further, Defendant FB is a Hawai`i corporation, and its sole officer and director is Defendant Nishizawa.  Plaintiffs alleged that Defendant Nishizawa is a permanent resident alien and a Hawai`i citizen.  [Id. at ¶¶ 1-2.]

In its memorandum in opposition the instant Motion, Defendant FB states that Defendant Nishizawa is a Japan citizen who lives in the United States on a temporary work visa. Defendant FB also alleges that Defendant Nishizawa informed Mr. Matsuda of this fact during their negotiations over the purchase of ENT franchise rights.  [Nishizawa Decl. at ¶¶ 8-11.] Defendant FB therefore argues that diversity jurisdiction is lacking because both Plaintiff ENT Japan and Defendant Nishizawa are Japanese citizens.[5]

Defendant Nishizawa's citizenship arguably destroys jurisdiction in two ways.  First, complete diversity requires that every plaintiff be a citizen from a different state than

_____

[5] Defendant ENT HI is an LLC, and therefore is considered to be a citizen of every state that its owners or members are citizens of.  See Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006).  Plaintiffs alleged that Defendant Nishizawa is the sole member of Defendant ENT HI, [First Amended Complaint at ¶ 1,] and Defendant appear to concede that allegation.  [Nishizawa Decl. at ¶ 3 ("I own and control ENT Holdings LLC . . . .").]  Defendant ENT HI is therefore considered to be a citizen of Japan for diversity jurisdiction purposes, and Defendant ENT HI's citizenship has the same impact on this case as Defendant Nishizawa's citizenship.

every defendant.  See In re Digimarc Corp. Derivative Litig., 549 F.3d 1223, 1234 (9th Cir. 2008).  Second, diversity jurisdiction does not include suits between a foreign plaintiff and a foreign defendant, even if there are also citizen defendants.  See 28 U.S.C. § 1332(a);[6] see also Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 991 (9th Cir. 1994) (citing Faysound Ltd. v. United Coconut Chem., Inc., 878 F.2d 290, 294 (9th Cir. 1989) (presence of citizen defendant does not save jurisdiction as to alien defendant in action brought by alien plaintiff) (some citations omitted)).

In light of Defendant Nishizawa's and Defendant ENT HI's citizenship, this district court arguably did not have jurisdiction over the case during most of the proceedings,

----

[6] Section 1332(a) provides, in pertinent part:
The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
. . . .
(2) citizens of a State and citizens or subjects of a foreign state;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

including the entry of the Stipulated Injunction.  On September 7, 2010, however, the Stipulation for Dismissal dismissed Defendant Nishizawa and Defendant ENT HI from this case.  Federal Rule of Civil Procedure 21 states, in pertinent part: "Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party."  Thus, courts have recognized that, "[u]nder Rule 21, a district court can dismiss dispensable, nondiverse parties either before *or* after a final judgment." Dexia Credit Local v. Rogan, 602 F.3d 879, 883 (7th Cir. 2010) (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 827, 832 n.6 (1989); Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 572-73 (2004) (some citations omitted)) (emphasis in original).  Even in a case where the non-diverse defendant participated in the litigation, which culminated in a jury verdict and a post-verdict ruling of judgment as matter of law, the parties could stipulate to the dismissal of the non-diverse parties to preserve diversity jurisdiction on appeal.  See Elliott v. Tilton, 89 F.3d 260, 261-62 (5th Cir. 1996).  In that case, the Fifth Circuit noted:

> In order to avoid the expense and delay of a
> remand and subsequent appeal, the parties
> stipulated that Word of Faith World Outreach
> Center Church, as well as its predecessor, Word of
> Faith World Outreach Center, Inc., should be
> dismissed.  The parties moved jointly that the
> judgment of the district court with regard to
> these defendants be vacated.  This motion was

granted.  With complete diversity thus achieved, this Court again granted rehearing to consider, on the merits, the appeals of the individual defendants.

Id. at 262.

Defendant FB argues that, under the facts of the instant case, Defendant Nishizawa and Defendant ENT HI are indispensable parties, see Fed. R. Civ. P. 19(b), and therefore should not have been dismissed.  Rule 21, however, does not prohibit the dismissal of indispensable parties; it merely states that the dismissal must be "on just terms".  In the present case, the parties stipulated to dismiss Defendant ENT HI and Defendant Nishizawa and to dismiss any of Plaintiffs' remaining claims against Defendant FB.  The district judge approved the stipulation.  Plaintiffs can no longer enforce the Stipulated Injunction against Defendant ENT HI.  Defendant ENT HI and Defendant FB, however, are separate and distinct legal entities. [Nishizawa Decl. at ¶ 4.]  Further, Defendant ENT HI represented to Plaintiffs and the district judge at a May 20, 2010 status conference that Defendant FB controlled ENT Waikiki and the website where the Disclaimer was posted.  [Mem. in Opp. at 3.] This Court therefore FINDS that the dismissal of Defendant ENT HI and Defendant Nishizawa was just and CONCLUDES that there is diversity jurisdiction between the remaining parties, Plaintiff ENT International, Plaintiff ENT Japan, and Defendant FB.  See § 1332(a)(2).

## II.  <u>Attorneys' Fees</u>

A federal court sitting in diversity must apply state law regarding entitlement to an award of attorneys' fees.  <u>See Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.</u>, 250 F.3d 1234, 1236 (9th Cir. 2001).  Under Hawai`i law, "[o]rdinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement." <u>Stanford Carr Dev. Corp. v. Unity House, Inc.</u>, 111 Hawai`i 286, 305, 141 P.3d 459, 478 (2006) (citation and quotation marks omitted).

In the present case, the Stipulated Injunction does not include any agreement regarding attorneys' fees, and Plaintiffs have not pointed to any provision in the Agreement regarding an entitlement to attorneys' fees in litigation arising from the Agreement.  Section 12 of the Agreement addresses enforcement of the Agreement and resolution of disputes arising out of the Agreement.  [First Amended Complaint, Exh. 1 at 15-16.]  The Agreement states that, in addition to alternative dispute resolution, the parties have the right to seek immediate injunctive or equitable relief in the Hawai`i Federal Courts. [<u>Id.</u>, ¶¶ 12.1-12.3.]  Section 12.7 provides that the parties shall bear their own arbitration costs and equally bear the arbitrator's costs.  [<u>Id.</u> at 16.]  The Agreement, however, does not address the costs of litigation for injunctive or equitable

22

relief.   The Court therefore FINDS that Plaintiffs are not
entitled to attorneys' fees pursuant to stipulation or contract.

Plaintiffs argue that they are entitled to attorneys'
fees pursuant to statute, in particular Haw. Rev. Stat. § 480-
13(a)(2) and § 481A-4(b).   Plaintiffs' First Amended Complaint
sought injunctive relief, and Plaintiffs did in fact obtain at
least part of the injunctive relief they sought.   The First
Amended Complaint also prayed for attorneys' fees as part of the
§ 480-2 claim and prayed for attorneys' fees as part of the
§ 481A-3 claim.   Plaintiffs, however, also raised other claims:
breach of contract, violations of franchise law, defamation and
disparagement, and declaratory judgment.   Defendant FB emphasizes
that the district judge based the TRO Order solely on the
parties' Agreement; the relief ordered in the TRO was not based
on Haw. Rev. Stat. Chapter 480 or Chapter 481.   Defendant FB
therefore argues that Plaintiffs cannot recover attorneys'
pursuant to § 480-13(a)(2) or § 481A-4(b).   Defendant FB
acknowledges that Plaintiffs arguably could have moved for
attorneys' fees under Haw. Rev. Stat. § 607-14, which governs
claims in the nature of assumpsit, but Defendant FB argues that
Plaintiffs' failure to do so in a timely manner waived any
entitlement to fees under § 607-14.   [Mem. in Opp. at 13-15.]

Plaintiffs base their claim to attorneys' fees upon the
Stipulated Injunction, but the Stipulated Injunction does not

23

specify which specific claim, or claims, it addresses.  It does
not refer to either Chapter 480 or Chapter 481A.   In the
Stipulated Injunction, the parties agreed upon, and the district
judge ordered, the following permanent injunctive relief:

> 1.   Requiring Defendants to remove the
> statement that "This Hawaii Eggs 'N Things
> restaurant is unaffiliated with the Eggs 'N Things
> in Harajuku, Japan" from the website
> www.eggsnthings.com and the Hawaii Eggs 'N Things
> restaurant located at 343 Saratoga Road, Honolulu,
> Hawaii 96815.
> 2.   Prohibiting Defendants, its agents,
> officers, employees, or any person in active
> concert or participation with Defendants, from
> making or posting any statement or publication of
> any kind, oral or written, that is false or
> misleading regarding the ENT brand in Japan or the
> Harajuku restaurant, including, but not limited
> to, any disclaimer of affiliation with Plaintiffs;
> provided, however, that the foregoing does not
> apply to filings in these proceedings or the
> arbitration proceedings.

[Stipulated Injunction at 2.]  This language is identical to the
relief that the district judge ordered in the TRO Order.  [TRO
Order at 12-13.]

Insofar as the parties adopted the relief in the TRO
Order verbatim in the Stipulated Injunction, it could be inferred
that the parties adopted the analysis in the TRO Order as well.
The TRO Order does not refer to Plaintiffs' claims under either
Haw. Rev. Stat. § 480-2 or § 481A-3.  In fact, the TRO Order is
based upon Plaintiffs' contract claim.  [Id. at 8 ("Plaintiffs
have shown a likelihood of success on the merits of their breach
of contract claim."), 11 ("[T]he court finds that entering a

24

temporary restraining order is in the public interest because it will uphold and encourage a written contract.").]  To the extent that the Stipulated Injunction adopted the district judge's analysis in the TRO Order, Plaintiffs arguably could have moved for attorneys' fees pursuant to Haw. Rev. Stat. § 607-14.[7]  The Court, however, expresses no opinion as to whether such a motion would have been successful because Plaintiffs' failure to file a timely motion for attorneys' fees pursuant to § 607-14 waived any claim to such fees.

Neither the TRO Order nor the Stipulated Injunction refer to Plaintiffs' § 480-2 or § 481A-3 claims.  The Court must therefore determine whether the language in the Stipulated Injunction or the TRO Order is sufficient to support an award of attorneys' fees under the statutes that Plaintiffs rely upon.

A.   **Haw. Rev. Stat. § 480-13(a)(2)**

Section 480-13(a) provides, in pertinent part:

any person who is injured in the person's business
or property by reason of anything forbidden or
declared unlawful by this chapter:

---

[7] Section 607-14 states, in pertinent part: "In all the courts, in all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable . . . ."  The Hawai`i Supreme Court has stated that: "Assumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi-contractual obligations."  Porter v. Hu, 116 Hawai`i 42, 66, 169 P.3d 994, 1018 (Ct. App. 2007) (citation and block quote format omitted).

> . . . .
> (2) May bring proceedings to enjoin the
> unlawful practices, and if the decree is for
> the plaintiff, the plaintiff shall be awarded
> reasonable attorney's fees together with the
> costs of suit.

Count III of Plaintiffs' First Amended Complaint alleged:

> 79.  Defendant ENT HI and ENT JAPAN compete
> with each other for the sale of authorized ENT-
> related merchandise.
> 80.  By falsely disparaging and denying any
> relationship between Defendant ENT HI and ENT
> Japan, Defendant ENT HI and/or Defendant FB
> Innovations has damaged ENT Japan's business and
> property through acts of unfair competition in
> violation of HRS § 480-2.  Consequently ENT Japan
> is entitled to injunctive relief, treble damages
> and reimbursement of its attorneys' fees and
> costs.

[First Amended Complaint at ¶¶ 79-80.]  In the instant Motion,

Plaintiffs argue that, because they obtained the relief prayed

for in Count III, they are entitled to attorneys' fees pursuant

to § 480-13(a)(2).  Plaintiffs' argument is misplaced.

Although Count III sought injunctive relief to enjoin

practices that allegedly violated § 480-2[8] and Plaintiffs did

obtain injunctive relief, this Court cannot find that Plaintiffs

obtained the injunctive relief in connection with Count III.

Count III alleged that Defendant ENT HI's and/or Defendant FB's

actions damaged Plaintiff ENT Japan's "business and property

through acts of **unfair competition**".  [First Amended Complaint at

---

[8] Section 480-2(a) states: "Unfair methods of competition
and unfair or deceptive acts or practices in the conduct of any
trade or commerce are unlawful."

¶ 80 (emphasis added).]  The First Amended Complaint alleges that Defendant ENT HI and Plaintiff ENT Japan "compete with each other for the sale of authorized ENT-related merchandise."  [<u>Id.</u> at ¶ 79.]  Thus, Count III is based on alleged unfair competition between Defendant ENT HI and Plaintiff ENT Japan.  Neither the Stipulated Injunction nor the TRO Order makes any findings about this competition.  This Court therefore cannot find that Plaintiffs prevailed on Count III, the § 480-2 claim.

The Court RECOMMENDS that the district judge DENY Plaintiffs' Motion as to their request for attorneys' fees pursuant to Haw. Rev. Stat. § 480-13(a)(2).

**B.   <u>Haw Rev. Stat. § 481A-4(b)</u>**

Plaintiffs also contend that they are entitled to attorneys fees pursuant to Haw. Rev. Stat. § 481A-4(b)(2). Section 481A-4 provides, in pertinent part:

> (a) A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.  Proof of monetary damage, loss of profits, or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.
> (b) Costs shall be allowed to the prevailing party unless the court otherwise directs.  The court may award attorneys' fees to the prevailing party if . . . (2) the party charged with a deceptive trade practice has wilfully engaged in the trade practice knowing it to be deceptive.

In Count IV of the First Amended Complaint, Plaintiffs

27

alleged that Defendants' conduct constituted deceptive trade practices and violated Haw. Rev. Stat. § 481A-3, and Plaintiffs sought injunctive relief and attorneys' fees pursuant to § 481A-4. [First Amended Complaint at ¶¶ 81-83.] Plaintiffs argue that, because they obtained the requested injunctive relief, they are the prevailing parties on this claim. They also note that the First Amended Complaint sought to have the parties' dispute resolved in mediation and/or arbitration pursuant to the Agreement. [Id. at 24, ¶ B.] Insofar as the dispute is now proceeding in that forum, Plaintiffs contend that they are also the prevailing party as to that request as well.

Even assuming, *arguendo*, that Plaintiffs are the prevailing party as to Count IV, that alone would not trigger an entitlement to attorneys' fees pursuant to § 481A-4(b)(2). Plaintiffs must also establish that Defendant FB "wilfully engaged in the trade practice knowing it to be deceptive." Nothing in the Stipulated Injunction or the TRO Order would support such a finding. This Court therefore cannot find that Plaintiffs prevailed on Count IV, the § 481A-3 claim.

The Court RECOMMENDS that the district judge DENY Plaintiffs' Motion as to their request for attorneys' fees pursuant to Haw. Rev. Stat. § 481A-4.

## CONCLUSION

In accordance with the foregoing, this Court HEREBY

28

FINDS AND RECOMMENDS that Plaintiffs' Motion for Attorneys' Fees and Costs, filed September 21, 2010, be DENIED.

The parties are advised that any objection to this Finding and Recommendation is due seventeen calendar days after being served with a copy of this Findings and Recommendation. See Fed. R. Civ. P. 5(b)(2) & 6(d); Local Rule LR74.2.  If an objection is filed with the Court, it shall be captioned "Objections to Magistrate Judge's Findings and Recommendation." A copy of the objection shall be served on all parties.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, December 16, 2010.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

EGGS 'N THINGS INTERNATIONAL HOLDINGS PTE LTD., ET AL. V. ENT HOLDINGS, LLC; CIVIL NO. 10-00298 JMS-LEK; FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS