IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EGGS 'N THINGS INTERNATIONAL HOLDINGS PTE. LTD., a Singapore private limited company, and EGGS 'N THINGS JAPAN, K. K., a Japan company,<br><br>        Plaintiffs,<br><br>   vs.<br><br>ENT HOLDINGS LLC, a Hawaii limited liability company; FB INNOVATION HAWAII, INC., a Hawaii domestic corporation, and YUKA NISHIZAWA,<br><br>        Defendants.<br>_____ | CIVIL NO. 10-00298 JMS/LEK<br><br>ORDER ADOPTING THE DECEMBER 16, 2010 FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS |

## ORDER ADOPTING THE DECEMBER 16, 2010 FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

## I.  INTRODUCTION

This dispute stems from a License Agreement allowing Plaintiffs Eggs

'N Things ("ENT") International Holdings PTE. LTD ("ENT International") and

ENT Japan, K. K. ("ENT Japan") (collectively, "Plaintiffs") to operate ENT

establishments in designated territories, including Japan.  Plaintiffs developed an

ENT restaurant located in Harajuku, Japan (the "Japan ENT restaurant"), but had

various disputes with Defendants ENT Holdings LLC ("ENT Holdings"), FB

Innovation Hawaii, Inc. ("FB"), and Yuka Nishizawa (collectively, "Defendants")

regarding the layout and quality of food at the Japan ENT restaurant.  After the

Japan ENT restaurant opened, FB placed on its website www.eggsnthings.com and

at its Hawaii ENT restaurant a disclaimer that the Hawaii ENT restaurant was

unaffiliated with the Japan ENT restaurant.

This action swiftly followed, resulting in the court entering a

temporary restraining order ("TRO") requiring Defendants to remove the

statements that the Hawaii ENT restaurant is unaffiliated with the Japan restaurant,

and prohibiting Defendants from making any false or misleading statements

regarding the ENT brand in Japan or the Japan ENT restaurant.  The parties

subsequently stipulated to a permanent injunction ("Stipulated Injunction"), and

ultimately stipulated to dismiss ENT Holdings and Nishizawa without prejudice

and to dismiss all remaining claims.

Plaintiffs sought attorneys' fees from FB on the basis that their claims

for violation of Hawaii Revised Statutes ("HRS") §§ 480-13(a)(2) and 481A-4(b)

allow the prevailing party to recover fees and costs.  On December 16, 2010, then-

Magistrate Judge Leslie E. Kobayashi entered her Findings and Recommendation

to Deny Plaintiffs' Motion for Attorneys' Fees and Costs (the "December 16

F&R"). The December 16 F&R found, among other things, that Plaintiffs were not entitled to their attorneys' fees pursuant to either HRS § 480-13(a)(2) or § 481A-4(b) because neither the TRO nor the Stipulated Injunction supports an award of attorneys' fees under these statutes. Plaintiffs object. Based on the following, the court ADOPTS the December 16 F&R.

## II. BACKGROUND

As this court previously outlined in its TRO, ENT Holdings is in the business of developing and operating ENT branded restaurants and cafes. FB has the right to use the ENT brand at the Hawaii ENT restaurant, while Plaintiffs have the right to use the ENT brand at the Japan ENT restaurant.

As for Plaintiffs' rights to use the ENT brand, on March 21, 2009, ENT Holdings entered into a License Agreement with Kouta Matsuda ("Matsuda") whereby ENT Holdings licensed Matsuda to operate ENT establishments in designated territories, including Japan. As allowed by § 11.5 of License Agreement, Matsuda subsequently formed ENT International and assigned all of his rights under the License Agreement to it. ENT International in turn subfranchised a portion of the franchise territory to its subsidiary ENT Japan.

As Plaintiffs prepared the Japan ENT restaurant for opening, the parties began having various disagreements about the layout and quality of food of

the restaurant. Despite these disputes, the Japan ENT restaurant opened in March

2010. On or around May 15, 2010, however, FB placed on the website

www.eggsnthings.com and at its Hawaii ENT restaurant the following

"Disclaimer":

> 1) This Hawaii Eggs 'N Things restaurant is unaffiliated
> with the Eggs 'N Things in Harajuku, Japan.
> 2) Authentic retail items and merchandise sold at the
> Hawaii restaurant, such as its pancake mix, can only be
> purchased at the Hawaii restaurant or online at
> www.eggsnthings.com.

On May 19, 2010, Plaintiffs filed this action against ENT Holdings

and sought a TRO to have Defendants remove this Disclaimer and post a corrective

statement. At a May 20, 2010 status conference, counsel for ENT Holdings

asserted that FB (as opposed to ENT Holdings) owned the website and the Hawaii

ENT restaurant such that FB was a necessary party. *See* Doc. No. 27 at 7.

As a result, Plaintiffs filed an Amended Complaint and Amended

Motion for TRO against ENT Holdings, FB, and Nishizawa, who is sole member

of ENT Holdings and sole officer and director of FB. The Amended Complaint

asserted claims for: (1) breach of contract against ENT Holdings; (2) violation of

Hawaii's Franchise Investment Law, HRS Ch. 482E, against ENT Holdings;

(3) unfair competition in violation of HRS § 480-2 against ENT Holdings and FB;

(4) deceptive trade practices in violation of HRS § 481A-3 against Defendants;

4

(5) business defamation and commercial disparagement against Defendants; and

(6) declaratory judgment.

On May 27, 2010, the court granted in part Plaintiffs' Motion for

TRO. The TRO found that the Plaintiffs would likely prevail on their breach of

contract claim and that the other factors also weighed in favor of preliminary relief.

The court therefore entered the TRO:

> 1. Requiring Defendants to remove the statement that "This Hawaii Eggs 'N Things restaurant is unaffiliated with the Eggs 'N Things in Harajuku, Japan" from the website www.eggsnthings.com and the Hawaii Eggs 'N Things restaurant located at 343 Saratoga Road, Honolulu, Hawaii 96815.
> 2. Prohibiting Defendants, its agents, officers, employees, or any person in active concert or participation with Defendants, from making or posting any statement or publication of any kind, oral or written, that is false or misleading regarding the ENT brand in Japan or the Harajuku restaurant, including, but not limited to, any disclaimer of affiliation with Plaintiffs; provided, however, that the foregoing does not apply to filings in these proceedings or the arbitration proceedings.

TRO at 12-13. The court further set a hearing for Plaintiffs' Motion for

Preliminary Injunction. *See* Doc. No. 31.

Before the hearing on the Motion for Preliminary Injunction was held,

on June 23, 2010, the court signed a "Stipulated Permanent Injunction and Order"

("Stipulated Injunction") between Plaintiffs, ENT Holdings, and FB of the same

scope as the TRO Order.  In the Stipulated Injunction, the parties agree that the "stipulated injunctive relief . . . negates the need for the hearing on the motion for preliminary injunction set for July 20, 2010 and a trial concerning permanent injunctive relief."  Doc. No. 34 at 2.

On September 7, 2010, the parties stipulated to dismissal of ENT Holdings and Nishizawa without prejudice, and dismissal of all remaining claims against FB without prejudice.

On September 21, 2010, Plaintiffs filed their Motion for Attorneys' Fees against FB.  On October 25, 2010, FB and ENT Holdings each filed Objections, arguing, among other things, that the court lacks diversity jurisdiction, that attorneys' fees are not warranted because Plaintiffs were not the prevailing party, and that the fees requested are excessive.  On November 12, 2010, Plaintiffs filed a Reply.

On December 16, 2010, then-Magistrate Judge Kobayashi entered the F&R finding that Plaintiffs were not entitled to attorneys' fees.  On January 3, 2011, Plaintiffs filed their Objections, and on January 14, 2011, FB filed its Response.  The court granted Plaintiffs leave to file a Reply, which was filed on January 28, 2011.

# III.  STANDARD OF REVIEW

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

Under a de novo standard, this court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered."  *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006); *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).  The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendation to which a party objects.  *United States v. Remsing*, 874 F.2d 614, 616 (9th Cir. 1989).

///

///

# IV.  DISCUSSION

In their Motion for Attorneys' Fees, Plaintiffs argued that they are entitled to attorneys' fees because they are prevailing parties against FB pursuant to HRS §§ 480-13 and/or 481A-4(b).  In opposition, FB and ENT Holdings argued that Plaintiffs are not entitled to attorneys' fees and in any event, the court lacked diversity jurisdiction when this action was filed such that it cannot award attorneys' fees now.  The December 16 F&R found that the court has diversity jurisdiction and that Plaintiffs were not entitled to their attorneys' fees pursuant to either HRS §§ 480-13(a)(2) or 481A-4(b) because neither the TRO Order nor the Stipulated Injunction supports attorneys' fees under these statutes.  As it must, the court addresses the jurisdictional issue first, and, finding jurisdiction, addresses the merits of Plaintiffs' request for attorneys' fees.

## A.    Jurisdiction

Plaintiffs brought this action in this court on the basis of diversity jurisdiction -- the Amended Complaint asserts that Plaintiff ENT International is a Singapore company and Plaintiff ENT Japan is a Japanese company, while Defendants ENT Holdings, FB, and Nishizawa are Hawaii companies and/or citizens.  FAC ¶¶ 1-5.  The parties agree that these allegations support diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).  FB now asserts, however, that

Nishizawa is actually a citizen of Japan, not Hawaii. As a result, FB argues that the court lacked diversity jurisdiction and thus cannot address Plaintiffs' request for attorneys' fees. FB Resp. 10-11.[1] Relying on Federal Rule of Civil Procedure 21, the December 16 F&R rejected this argument, finding that even if Nishizawa was a Japanese citizen, diversity jurisdiction was preserved when she was dismissed from this action. Dec. 16 F&R 19-21. Based on a de novo review, the court agrees with the December 16 F&R's conclusion.

### 1.  *Framework*

Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. . . ." "[I]t is well-settled that Rule 21 invests district courts with authority to allow a dispensable non-diverse party to be dropped at any time, *even after judgment has been rendered*." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) (emphasis added); *see also Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 573 (2004). In other words, the court may drop a non-diverse party, at any time, so long as the party is not "indispensable"

---

[1] Plaintiffs argue that FB waived this argument by failing to object to the December 16 F&R. Although FB should have filed any objections it had to the December 16 F&R, the parties cannot waive the issue of jurisdiction and the court therefore addresses this argument.

under Rule 19(b).[2]  *Inecon Agricorporation v. Tribal Farms, Inc.*, 656 F.2d 498, 500 (9th Cir. 1981); *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980).

Rule 21 provides the court this flexibility because the alternative of dismissing the action for lack of subject matter jurisdiction would result in the plaintiff simply refiling the action without the non-diverse party, which would waste the time and resources of all involved.  *See Newman-Green, Inc.*, 490 U.S. at 838.  Accordingly, Rule 21 allows "practicality [to prevail] over logic" so that the court "may dismiss a dispensable, non-diverse party in order to perfect retroactively the district court's original jurisdiction."  *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987); *see also Dexia Credit Local v. Rogan*, 604 F. Supp. 2d 1180, 1187 (N.D. Ill. 2009) (finding that

---

[2]  As of December 1, 2007, Rule 19(b) no longer includes the term "indispensable." Because these changes were stylistic only, prior cases referencing "indispensable" parties remain good law.  *See Republic of Philippines v. Pimentel*, 553 U.S. 851, 855-56 (2008) (stating changes to Rule 19(b) were stylistic only); *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 n.2 (2d Cir. 2009) ("There is no substantive difference between the present [Rule 19(b) ] and the rule as applied . . . prior to the 2007 amendment."); *see also E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005) (explaining that term "indispensable" in Rule 19(b) is used "only in a conclusory sense, that is, a person is regarded as indispensable when he cannot be made a party and, upon consideration of the factors in Rule 19(b), it is determined that in his absence it would be preferable to dismiss the action, rather than to retain it") (brackets, citation, and quotation signals omitted).  As such, for the sake of consistency and convenience, the court refers to parties that a court "in equity and good conscience" cannot proceed without under Rule 19(b) as "indispensable."

even though the court did not have diversity jurisdiction at the time judgment was entered, it was nonetheless "a final judgment due to the retroactive effect of the Rule 21 dismissals"). The court must nonetheless use this authority "sparingly," to ensure that dismissal of the non-diverse party will not prejudice any of the remaining parties in the litigation. *See Newman-Green, Inc.*, 490 U.S. at 837.

As the court explained in *Royal Travel, Inc. v. Shell Management Hawaii, Inc.*, 2009 WL 2448495, at *2 (D. Haw. Aug. 11, 2009), a party is indispensable under Rule 19(b) if in "equity and good conscience" the court should not allow the action to proceed in its absence. Fed. R. Civ. P. 19(b); *see, e.g.*, *Dawavendewa v. Salt River Project Agric. Imp. & Power Dist.*, 276 F.3d 1150, 1161 (9th Cir. 2002). The factors to be considered under Rule 19(b) are: (1) the extent a judgment rendered in the person's absence might prejudice that person or other parties; (2) the extent to which prejudice could be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b); *see E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779-80 (9th Cir. 2005).

Rule 19's indispensable party "inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Dawavendewa*, 276 F.3d

at 1154; *see also Republic of Philippines v. Pimentel*, 553 U.S. 851, 862-63 (2008) ("The design of . . . Rule [19] . . . indicates that the determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations."); *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1135 (9th Cir. 2005) (noting that whether a party is "indispensable" is an equitable consideration of the Rule 19(b) factors).

### 2. *Application*

Although Plaintiffs added Nishizawa as a Defendant in the Amended Complaint, the Stipulated Injunction is solely against FB and ENT Holdings -- the parties agreed to dismiss Nishizawa as a party. Under these facts, the court finds that Nishizawa is not an indispensable party such that her earlier dismissal from this action preserves the court's jurisdiction. There is no prejudice to either Nishizawa or any of the other parties if the court maintains this action -- the parties' Stipulated Injunction does not include Nishizawa, Nishizawa was dismissed from this action (by agreement of the parties), and the attorneys' fee issue is directed to FB only. Given this posture, Nishizawa was not needed for judgment and the parties have adequate remedies without Nishizawa present as a party.

In opposition, FB argues that the court should deny Plaintiffs'

attorneys' fees request because Plaintiffs knew Nishizawa was a Japanese citizen and made false representations to the court regarding the court's jurisdiction. FB Resp. 10-11. FB fails to adequately support these serious allegations and the court therefore rejects them. Although FB presented evidence that Nishizawa told Matsuda in 2009 that she was a Japanese citizen working in the United States on an E-2 visa, *see* FB Opp'n, Nishizawa Decl. ¶¶ 11-12, the court does not infer any bad intent on the part of Plaintiffs.[3] This communication occurred over a year before this action was filed and there is no evidence that Matsuda remembered this conversation -- much less understood its relevance to the issue of diversity jurisdiction -- at the time this action was filed.

In sum, the court finds that to the extent the court did not have diversity jurisdiction due to Nishizawa's presence as a Defendant, she is not indispensable and has been dropped from this action such that the court retains jurisdiction.

---

[3] Indeed, if anything, it appears that *Defendants* are the ones that have engaged in gamesmanship. Rather than raising the issue of Nishizawa's citizenship in a timely fashion, Defendants, who apparently wanted to remain in federal court, entered into the Stipulated Injunction, and only now does FB raise the issue of jurisdiction when faced with the prospect of attorneys' fees. *See* Doc. No. 28 at 23-24 (Counsel for ENT Holdings asserting that "[w]e were very happy to be in federal court," and that "I would like the court's involvement" even though the TRO was against Defendants). Although retroactive use of Rule 21 should be used sparingly, under these facts, this action presents an ideal example of when it should be used because no prejudice will befall any of the parties and a finding of no jurisdiction would prove nothing more than a waste of party and judicial resources.

**B.      Plaintiffs' Request for Attorneys' Fees**

A federal court sitting in diversity must apply state law in determining whether the prevailing party is entitled to attorneys' fees.  *See Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1236 (9th Cir. 2001). Under Hawaii law, "[o]rdinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement."  *Stanford Carr Dev. Corp. v. Unity House, Inc*., 111 Haw. 286, 305, 141 P.3d 459, 478 (2006) (citation and quotation marks omitted).

Plaintiffs assert that they are entitled to attorneys' fees pursuant to HRS §§ 480-13 and/or 481A-4.  Although HRS §§ 480-13 and 481A-4 both provide for attorneys' fees, they markedly differ.  Specifically, HRS § 480-13(a)(2) mandates attorneys' fees, providing that "if the decree is for the plaintiff, the plaintiff shall be awarded reasonable attorneys' fees."  In comparison, HRS 481A-4(b) provides that the "court may award attorneys' fees to the prevailing party if . . . the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive."

In general, a party "prevails" for purposes of attorneys' fees if  "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433

(1983) (citation and quotation signals omitted)); *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 620, 575 P.2d 869, 879 (1978) ("[W]here a party prevails on the disputed main issue, even though not to the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees.").

A final judgment on the merits is not a condition precedent to obtaining the status of a 'prevailing party.'" *UFO Chuting of Haw. v. Smith*, 508 F.3d 1189, 1197 (9th Cir. 2007). Although Hawaii courts have not addressed the precise issue, the court finds persuasive cases interpreting federal law providing that "attorney's fees may be awarded based on a settlement when it is enforced through a consent decree." *Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 165 (3d Cir. 2002). An order, even when agreed to by the parties, can render one side a "prevailing party" where it "(1) contains mandatory language . . . (2) is entitled 'Order,' [] (3) bears the signature of the District Court judge, not the parties' counsel," and (4) "[ gives the party] the right to request judicial enforcement." *Id.* (citing *Farrar*, 506 U.S. at 113 ("No material alteration of the

15

legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant.")); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).

With these principles in mind, the court determines whether Plaintiffs are prevailing parties under either HRS § 480-13 or § 481A such that they may receive attorneys' fees.

### 1. HRS Ch. 480

Section 480-2(a) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." In turn, HRS § 480-13(a) provides that "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by [chapter 480]: (1) [m]ay sue for damages . . .; and (2) [m]ay bring proceedings to enjoin the unlawful practices[.]" Accordingly, to prevail on their § 480-2 claim, Plaintiffs needed to establish that (1) FB engaged in unfair competition[4] in violation of HRS § 480-2, (2) the unfair competition caused injury

---

[4] Although § 480-2(a) also refers to unfair or deceptive acts, Plaintiffs are limited to asserting an unfair competition claim because only consumers, the attorney general, or the Director of the Office of Consumer Protection may bring an action for unfair or deceptive acts. *See* HRS § 480-2(d); *see also Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc*., 113 Haw. 77, 109, 148 P.3d 1179, 1211 (2006).

to Plaintiffs' business or property, and (3) proof of the amount of damages.  *See Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc*., 113 Haw. 77, 114, 148 P.3d 1179, 1216 (2006) (reciting elements of claim).

On the issue of what constitutes unfair competition, "[g]enerally speaking, competitive conduct 'is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 255 n.34, 982 P.2d 884, 853, n.34 (1999), *superseded by statute in Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc*., 113 Haw. 77, 148 P.3d 1179, 1216 (2006).  A plaintiff "may bring claims of unfair methods of competition based on conduct that would also support claims of unfair or deceptive acts or practices[, but] the nature of the competition [must be] sufficiently alleged in the complaint."  *Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 435, 228 P.3d 303, 315 (2010) (quoting *Haw. Med. Ass'n*, 113 Haw. at 111-12, 148 P.3d at 1213-14) (some alterations in original).

The First Amended Complaint asserts that ENT Japan and ENT Holdings "compete with each other for the sale of authorized ENT-related merchandise," and that "[b]y falsely disparaging and denying any relationship between Defendant [ENT Holdings] and ENT Japan, Defendant [ENT Holdings]

and/or [FB] has damaged ENT Japan's business and property through acts of unfair competition in violation of HRS § 480-2." Am. Compl. ¶¶ 79-80. Plaintiffs later explained in their Amended Motion for TRO that Plaintiffs and Defendants compete for sales of authentic ENT merchandise and therefore are seeking injunctive relief requiring Defendants to take down the portion of the Disclaimer stating that "authentic retail items and merchandise sold at the Hawaii restaurant, such as its pancake mix, can only be purchased at the Hawaii restaurant or online at www.eggsnthings.com." *See* Doc. No. 17 at 7-8.[5]

Plaintiffs did not receive the injunctive relief they sought on their unfair competition claim -- the court denied Plaintiffs this relief because Plaintiffs were not actually selling any merchandise and the statement was not false. *See* Doc. No. 28, at 17-18. It further stands to reason that with Plaintiffs not offering any merchandise for sale, Plaintiffs and FB were not competing with one another for any particular business. Given the Amended Complaint's failure to allege any other way in which Plaintiffs competed with Defendants and the inability of Plaintiffs to prove competition through the sale of products, the court finds that Plaintiffs did not prevail on their HRS § 480-2 claim. Put differently, the

---

[5] Plaintiffs' original Motion for TRO claims that, "[b]y falsely declaring that the products sold in Harajuku are not authentic, Defendants have engaged in unfair competition." *See* Doc. No. 4-2 at 19.

Stipulated Injunction *could not* have been based on a violation of HRS § 480-2 given the court's ruling on the TRO and the lack of competition between Plaintiffs and FB.

In opposition, Plaintiffs argue that even though they were not selling merchandise, the License Agreement permitted them to sell merchandise that would compete with FB and the Disclaimer had broad implications for competition that may occur in the future.  Pls.' Obj. 6-8.  Whatever the implications that the Disclaimer may have had for the future, it does not change that Plaintiffs failed to establish competition between Plaintiffs and FB to support a finding that they actually prevailed on this claim.  Accordingly, Plaintiffs are not entitled to attorneys' fees pursuant to HRS § 480-13.

### 2.    HRS § 481A-4

To be entitled to attorneys' fees for violation of Ch. 481A, Plaintiffs must establish two elements: (1) Plaintiffs prevailed on their Ch. 481A claim; and (2) FB "willfully engaged in the trade practice knowing it to be deceptive."  HRS § 481A-4(b).  The court addresses these elements in turn.

#### a.    Whether Plaintiffs prevailed

Section 481A-3 enumerates conduct that constitutes deceptive trade practices, while § 481A-4 provides that "[a] person likely to be damaged by a

deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable.  Proof of monetary damage, loss of profits, or intent to deceive is not required."  A plaintiff need not establish actual injury, only a likelihood of injury, and need not show actual confusion or misunderstanding.  *Balthazar v. Verizon Haw., Inc.*, 109 Haw. 69, 78, 123 P.3d 194, 203 (2005).

Plaintiffs are entitled to prevailing party status on their § 481A-4 claim because they received the injunctive relief they sought on this claim. Specifically, in support of the deceptive trade practices claim, Count IV of the Amended Complaint asserts that as a result of the Disclaimer, Defendants, among other things:

> a.    Caus[ed] a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services provided by ENT Japan;
> b.    Caus[ed] a likelihood of confusion or of misunderstanding as to affiliation, connection, or association between ENT Japan and Defendant; [and]
> c.    Disparag[]ed the goods, services, and business of ENT Japan by false or misleading representations of fact; . . .

*Id.* ¶ 82.

As a result of this alleged misconduct, Plaintiffs sought injunctive

relief, which was directly tied to Defendants' alleged deceptive trade practices. Specifically, Plaintiffs sought an injunction (1) prohibiting Defendants from making or posting any statement or publication of any kind that disparages the ENT brand in Japan or the Japan ENT restaurant or otherwise disclaims any affiliation with Plaintiffs; and (2) requiring Defendants to post a corrective statement regarding the parties' affiliation. *See id.* at p. 24 (requesting injunctive relief as set forth in its Motion for TRO); Doc. No. 4 (Motion for TRO requesting relief).

Plaintiffs received part of the injunctive relief they requested -- the TRO not only required Defendants to remove the statements that the Hawaii ENT restaurant is unaffiliated with the Japan ENT restaurant, but also prohibited any other false or misleading statements. The Stipulated Injunction made this relief permanent, obviating the need for Plaintiffs to proceed any further on their claims.

The Stipulated Injunction materially altered the legal relationship between the parties by modifying FB's behavior as requested by Plaintiffs. Specifically, the Stipulated Injunction: (1) contains mandatory language requiring FB and ENT Holdings to remove the Disclaimer from the website and Hawaii ENT restaurant, and prohibiting them from making any false or misleading statement or publication regarding the ENT brand in Japan or the Japan ENT restaurant; (2) is

titled "Stipulated Permanent Injunction and *Order*;" (emphasis added) (3) is signed by not only the parties but also the court; and (4) provides that the court "retains jurisdiction over Defendants and this action for all purposes, including the enforcement [of] the permanent injunctive relief stipulated herein." Stipulated Injunction 2-3. In other words, as a result of the Stipulated Injunction, Defendants were forced to permanently modify their behavior, and if they fail to do so, Plaintiffs can seek enforcement with this court. Such permanent, enforceable relief affords Plaintiffs prevailing party status.

The court further finds that this relief was based on Plaintiffs' § 481A-4 claim. Although the TRO limited its analysis to the breach of contract claim, the breach of contract claim was brought against ENT Holdings only, and the injunctive relief was as to all Defendants. Given that the contract claim applied solely to ENT Holdings yet the TRO was entered as to all Defendants, the TRO should have addressed claims against FB as well. This oversight -- due to the short time-frame required for determining the Motion for TRO -- would have certainly been corrected on a Motion for Preliminary Injunction, and at the hearing on the Motion for TRO, the court explained that ENT Hawaii and ENT Japan were clearly affiliated due to the License Agreement and the Disclaimer suggested that Plaintiff is "trying to operate illegally off the good will of [ENT] Hawaii." Doc. No. 28 at

10, 17.  Given Plaintiffs' allegations and the evidence presented, the court has little trouble finding that Plaintiffs' § 481A claim was both viable and supported by evidence, and the parties settled this claim by entering into the Stipulated Injunction.  In other words, the Stipulated Injunction effectively settled this claim between Plaintiffs and FB by providing Plaintiffs some of the permanent relief they sought on this claim.  Accordingly, that the TRO was limited to the breach of contract claim does not prevent Plaintiffs from receiving prevailing party status.[6]

In opposition, FB argues that Plaintiffs did not "prevail" because the injunctive relief they received was not all of the relief that they sought -- FB was not required to issue a corrective statement, and FB was allowed to keep one disputed statement on the website.  FB Resp. 9-10.  Contrary to FB's argument, Plaintiffs need not receive all the relief they sought to be afforded "prevailing party" status -- a party "prevails" for purposes of attorneys' fees if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley*, 461 U.S. at 433 (citation and quotation signals omitted)); *see also Food Pantry, Ltd.*, 58 Haw. at 620, 575 P.2d at 879 ("[W]here a party prevails on the disputed main issue, even though not to the extent of his

---

[6]  Indeed, it appears that even FB concedes that Plaintiffs prevailed on the Ch. 481A claim -- FB ultimately did not contest Plaintiffs' request for costs, *see* Dec. 16 F&R at 1 n.1, which Plaintiffs were entitled to pursuant to § 481A-4(b).  Further, unlike the § 480-2 claim, FB does not assert that Plaintiffs either failed to allege or substantiate this claim.

original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees.").  Plaintiffs succeeded on a significant issue -- as a result of bringing this action, FB was forced to take down the disclaimer and could no longer make any misleading statements regarding the ENT brand in Japan or the Japan ENT restaurant.  Plaintiff had specifically requested this relief, and the Stipulated Injunction modified FB's behavior to the benefit of Plaintiff.  *See Farrar*, 506 U.S. at 111-12.  Accordingly, Plaintiffs are prevailing parties even if they did not receive all of the relief they originally sought.

        *b.*     *Willfulness*

        Where Plaintiffs have prevailed on their 481A claim, the court may award attorneys' fees if Defendants "willfully engaged in the trade practice knowing it to be deceptive."  The court finds that Plaintiffs have not carried their burden on this element.

        As an initial matter, the parties dispute precisely what willfulness means in context of the statute -- FB asserts that Plaintiffs must establish that FB posted the Disclaimer with consciousness of their unlawful behavior, *see* FB Opp'n at 8, while Plaintiffs assert that they may simply prove that FB was conscious that its behavior was deceptive.  *See* Pls.' Reply 9.  Although it certainly appears that Plaintiffs have the better argument, the court need not resolve this statutory dispute

because even accepting Plaintiffs' construction, Plaintiffs have not carried their burden of establishing that FB knew that the Disclaimer was deceptive for several reasons.

First, Plaintiffs ask this court to make a willfulness determination based in part, on evidence introduced after judgment was entered. *See* Doc. No. 53, Glenn T. Melchinger Decl. Ex. 1. Plaintiffs present no support for the proposition that the court should consider new evidence at this stage of the proceeding -- to do so would impermissibly open the door to the possibility of a "second major litigation" on the issue of attorneys' fees. *See Buckhannon*, 532 U.S. at 609 (stating that "[a] request for attorney's fees should not result in a second major litigation," (quotation and citation signals omitted)).

Second, even considering all of Plaintiffs' arguments that FB acted willfully, the court finds that Plaintiffs have not carried their burden because the evidence they rely on -- the findings in the TRO and evidence of communications between Nishizawa and her counsel -- are equivocal at best when viewed under a close lens.

As for the TRO, it did not address or analyze willfulness and its findings were focused on the Disclaimer itself -- that the Disclaimer suggests that the Japan ENT Restaurant is unauthorized and wrongfully operating under the ENT

name, TRO at 5, and sends the message that the Hawaii ENT Restaurant was attempting to distance itself from the Japan ENT restaurant in the eyes of the Hawaii ENT restaurant's customers. TRO at 8. These statements do not address or otherwise consider FB's knowledge regarding the deceptiveness of the Disclaimer.

As to Nishizawa's email to her counsel, it appears that Nishizawa actually believed the Disclaimer to be both true and appropriate in light of the differences between the Japan ENT restaurant and the Hawaii ENT restaurant. Nishizawa was concerned that the Japan ENT restaurant cannot properly make ENT menu items and that Matsuda, by choosing to open the Japan ENT restaurant without meeting the ENT standards, would only hurt the Hawaii ENT restaurant and the ENT brand. Doc. No. 53, Ex. 1. Nishizawa explains that customers at the Hawaii ENT restaurant have been asking whether they can purchase ENT products at the Japan ENT restaurant and that the customers assume that the two restaurants are "the same." Nishizawa asserts that "technically speaking," the two restaurants have nothing to do with one another, and that simply telling customers this fact is no longer enough. Nishizawa therefore proposes a disclaimer:

> It may be a touchy situation for ENT to say something (ENT will have to carefully word it and plan it out. Phil has already told us that they will sue us for damages, but lets face it, Kouta Matsuda made his business decision knowing the risk and consequences of going ahead and opening when we said he can't!), but for FBHI to say "We

> are not related to the Harajuku store" or "We are not the
> same" etc (of course FBHI won't say Harajuku tastes bad
> and stuff), it is nothing but the truth, FB HI is merely
> stating the fact so as to answer customer inquiries like if
> pk mixes and merchandises can be purchased in Harajuku
> or not and so fourth [sic].

*Id.*

Although this email indicates that Nishizawa recognized that a disclaimer would likely result in a lawsuit, it does not carry Plaintiffs' burden of establishing that FB knew that the Disclaimer was deceptive. Indeed, Nishizawa asserted that she believed that the two restaurants are not related and not the same. Further, even if this email *could* support a finding of willfulness, the court would exercise its discretion not to award fees because the record as a whole is not well-developed on this issue and the parties obviously have a complicated relationship in which both sides believe the other has committed wrongdoing. Accordingly, the court finds that Plaintiffs have failed to establish that they should be awarded attorneys' fees pursuant to HRS § 481A-4.

///

///

///

///

///

# V. **CONCLUSION**

Based on the analysis above, the court ADOPTS the December 16,

2010 Findings and Recommendations to Deny Plaintiffs' Motion for Attorneys'

Fees and Costs.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 17, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Eggs 'N Things Int'l Holdings PTE, LTD et al. v. ENT Holdings, LLC et al.*, Civ. No. 10-00298
JMS/LEK, Order Adopting the December 16, 2010 Findings and Recommendation to Deny
Plaintiffs' Motion for Attorneys' Fees and Costs